Aaron R. Marienthal (SBN 273154)
aaron@martonribera.com
Marton Ribera Schumann & Chang LLP
548 Market Street STE 36117
San Francisco, CA 94104
415.360.2516

Attorneys for Plaintiff
Curtis International, Ltd.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS INTERNATIONAL, LTD.<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC LOGISTICS CORP.<br><br>Defendant. | Case No.: 2:17-cv-1968_____<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. BREACH OF CONTRACT**<br>**2. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**3. NEGLIGENCE**<br><br>**JURY TRIAL DEMANDED** |

## I. THE PARTIES

1. Plaintiff Curtis International, Ltd. ("Curtis") is a Canadian Limited company that manufactures and distributes of high quality, value priced consumer electronics and appliances. Curtis is headquartered at 315 Attwell Drive, Etobicoke, Ontario, M9W 5C1.

2. Defendant Pacific Logistics Corp. ("PLC") is a California Corporation that serves as a third-party logistics and warehousing provider. PLC has its principal place of business at 7255 Rosemead Blvd in Pico Rivera, CA 90660. At all times alleged herein, PLC was doing business throughout the State of California, including within this Judicial District.

## II. JURISDICTION AND VENUE

3. PLC is subject to the jurisdiction of this Court by virtue of its headquarters, business dealings, and transactions in this District, and by causing injurious effects in this District by its acts or omissions.

4. This Court has jurisdiction over this action under 28 U.S.C. Section 1332 regarding matters between diverse citizens that involve an amount in controversy in excess of $75,000.

5. Venue is proper in this Court because the property and transactions at issue occurred in this District, and a substantial part of the events giving rise to the alleged claims in this action occurred in this District pursuant to 28 U.S.C. §1391(b).

## III. FACTUAL ALLEGATIONS

6. On or about June 1, 2016, Curtis hired PLC to provide shipping and warehousing services, including management of the receiving, storing, and shipping of Curtis' goods from PLC's warehouse located at 7255 Rosemead Boulevard, Pico Rivera, CA 90660.

7. The parties memorialized their agreement in a contract made effective June 1, 2016 (the "Contract"). The Contract was signed by Douglas E. Hockersmith on behalf of PLC as its President and Chief Executive Officer, and by Jacob Herzog, Curtis' Chairman of the Board. A copy of the contract is attached hereto as Exhibit A.

8. The contract obligated Curtis to pay PLC for managing the receiving, storing, and shipping of Curtis' products at PLC's Warehouse. PLC agreed to "perform all activities and services necessary to receive, warehouse, and distribute Curtis products in accordance with the terms and conditions of this Agreement, applicable laws, industry practice, and directions and instructions issued by Curtis from time to time."

9. The Contract also provides that "PLC will place the proper headcount on the account that is necessary to implement and sustain the business requirements and

not impact Curtis customers."

10. In addition, "PLC agree[d] that all orders received must be shipped on the first day stipulated for shipment as set out in the order requirement, provided that the applicable Curtis products shall have been received in the Warehouse no later than 1:00 p.m."

11. PLC agreed to "indemnify Curtis for all demonstrable errors committed by PLC, its agents, and employees in connection with all fines and penalties imposed by a customer of Curtis relating to any purchase order, including but [] not limited to **late shipments, inventory shortage, and any deficiency in the purchaser's packaging standards, palletizing standards, shipping standards, and labelling standards.**"

12. PLC dropped the ball almost immediately. It began to miss deadlines, make late shipments, ship with the wrong carriers, ship double orders, or simply lose inventory altogether, as if certain items vanished out of thin air. All of these mistakes cost Curtis more than $75,000 in fines, lost profits, lost inventory and other damages.

13. For example, in July of 2016, Curtis needed to fulfill a purchase order of refrigerators. On information and belief, as is customary, Curtis provided the details of the purchase order to PLC via the parties' Microsoft Sharepoint system.

14. Notwithstanding the required delivery window of July 6 – July 13, 2016, the refrigerators were not even picked up at PLC's warehouse until July 14, 2016. The refrigerators were not delivered to the retailer until July 20, 2016, well after the deadline. This caused the retailer to issue a 10% penalty for an unauthorized late shipment. This was not the only time PLC delivered items late. These errors cost Curtis thousands of dollars in damages.

15. Also in July 2014, PLC mistakenly shipped at least $7,000 worth of goods to the same retailer—Shopko—twice, when that retailer only made a single order.

16. In another example from August, 2016, PLC failed to ensure that a signature upon delivery was obtained per the customer's protocol. On information and

belief, PLC knew this, and other protocol before shipping the goods. Due to its negligence, Curtis was damaged in the amount of at least $1,062.

17. In addition to late deliveries, inventory shortages, and sloppy double shipments, PLC lost at least $12,961.37 worth of Curtis' inventory—including microwaves, radios, refrigerators, DVD players, ice makers and freezers—without any explanation from PLC. Worse, when Curtis wrote to PLC regarding the discrepancies, its Director of Warehousing, Matt Berwager, wrote that "manually managing inventory with this type of velocity is a mistake neither party should have agreed to…PLC is not going to own any of that because we did not previously agree to do so."

18. In other correspondence between the parties, PLC employees directly admit to botching FedEx shipping labels and paperwork, conceding that "[t]his is an error on our part." Yet PLC obstinately refuses to take responsibility for its errors, and its contractual obligations to indemnify Curtis for them. Instead, PLC claims that these are consequential or incidental damages for which it is not responsible.

**FIRST CAUSE OF ACTION**
**(BREACH OF CONTRACT)**
**(Against PLC)**

19. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 18 of this Complaint.

20. Curtis and PLC entered into a valid and enforceable contract as set forth herein. The contract requires that PLC "receive, warehouse, and distribute Curtis products in accordance with the terms and conditions of this Agreement, applicable laws, industry practice, and directions and instructions issued by Curtis from time to time." The Contract provides that "PLC will place the proper headcount on the account that is necessary to implement and sustain the business requirements and not impact Curtis customers."

21. The contract also specifically provides that PLC will "indemnify Curtis for all demonstrable errors committed by PLC, its agents, and employees in connection

with **all fines and penalties imposed by a customer of Curtis relating to any purchase order, including but [] not limited to late shipments, inventory shortage, and any deficiency in the purchaser's packaging standards, palletizing standards, shipping standards, and labelling standards**."

22. Curtis has fulfilled all of its obligations under the Agreement, and has paid PLC for all of its services, irrespective of the breaches described herein.

23. All conditions precedent have been met or have been waived by PLC.

24. PLC breached the contract by, among other things, failing to "receive, warehouse, and distribute Curtis' products in accordance with the terms and conditions of [the] Agreement…industry practice, and directions and instructions issued by Curtis…."

25. PLC also breached the contract by failing to place the proper headcount on the account that is necessary to implement and sustain business requirements and not impact Curtis customers.

26. PLC breached the contract by consistently, and repeatedly refusing to indemnify and reimburse Curtis for their series of errors, including late shipments, inventory shortages, inventory losses, and other mistakes as partially set forth above.

27. Curtis has been damaged by these willful breaches in an amount not less than $75,000, but in an amount to be determined at trial, and is incurring thousands of dollars in attorneys' fees in order to enforce PLC's obligations.

28. Contrary to PLC's unfounded contentions, these damages are not incidental or consequential damages sustained by reason of contractual agreements between Curtis and third parties PLC was not aware of. On information and belief, PLC was aware of each and every one of the basic standards and protocols it was required to meet in order to timely and accurately deliver inventory to retailers.

29. PLC is also aware that it is liable for goods that simply disappeared out of its custody and control.

– 5 –
COMPLAINT FOR DAMAGES

30. To this date, PLC has refused to take responsibility for *any* of these breaches.

### SECOND CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing)
### (Against PLC)

31. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 30 of this Complaint.

32. As set forth above, Curtis and PLC entered into a valid and enforceable contract for services.

33. Curtis did all, or substantially all of the significant things that the contract required it to do, including paying PLC for services, or was otherwise excused from doing so.

34. All conditions required for PLC's performance occurred.

35. PLC unfairly interfered with Curtis' right to receive the benefits of the contract by its material breaches, omissions, and failures to perform as set forth above.

36. Curtis suffered thousands of dollars in damages as a result of PLC's breaches.

### THIRD CAUSE OF ACTION
### (Negligence)
### (Against PLC)

37. Plaintiff realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 36 of this Complaint.

38. PLC's conduct described above constitutes negligence.

39. PLC owed Curtis a duty of care to act as a reasonable third party logistics provider, and failed to live up to this duty by performing the acts and omissions outlined above, including losing Curtis inventory.

40. PLC's breaches of its duty of care actually and proximately caused Curtis economic harm in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them, as follows:

1. For compensatory damages, in amount according to proof at trial;
2. For restitution, in an amount according to proof at trial;
3. For pre-and post-judgment interest at the maximum legal rate;
4. For an awarded of attorneys' fees, litigation expenses, and costs of suit;
5. For such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury in the above-entitled action.


Dated: March 13, 2017

                                               MARTON RIBERA SCHUMANN & CHANG LLP

                                               By: */s/Aaron Marienthal*
                                                         Aaron Marienthal (SBN 273154)
                                                         Marton Ribera Schumann & Chang LLP
                                                         548 Market Street STE 36117
                                                         San Francisco, CA 94104
                                                         Attorneys for Plaintiff
                                                         Curtis International, Ltd.